**COLLEEN FLYNN**, CSB 234281
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: cflynnlaw@yahoo.com

Attorneys for Plaintiffs

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
Email: manncooklaw@gmail.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL PADILLA, an individual; CHRISTINA ASTORGA, an individual; HUGO PADILLA, an individual; KIYOKO DODSON, an individual; and RYAN DODSON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; DEPUTY SHERIFFS NATHAN DEBOOM (#606645), AARON ESCOBEDO (#621443), CHRISTOPHER GENTNER (#437349), JOSE HURTADO (#552712), MIKAH LOPEZ (#652884); CHARLES L. McDANIEL; JUAN MEZA (#484495), MICHAEL MILESKI (#424383), RAMON MUNOZ (#499029), ROVERT OKAMOTO (#511813); JOSE RAMIREZ (#503608), MARK REYES (#528504), P.R., ADRIAN RUIZ (#519554), SPENCER ZAGURSKI (#550493), all individuals; and DOES 1 through 10, all sued in their individual capacities,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. False Arrest / Malicious Prosecution (Emanuel Padilla) – 42 U.S.C. § 1983**<br><br>**2. Judicial Deception (Emanuel Padilla) - 42 U.S.C. § 1983**<br><br>**3. False Arrest (Christina Astorga & Hugo Padilla) – 42 U.S.C. § 1983**<br><br>**4. Excessive Force (Christina Astorga / Hugo Padilla) – 42 U.S.C. § 1983**<br><br>**5. Judicial Deception (Christina Astorga & Hugo Padilla) – 42 U.S.C. § 1983**<br><br>**6. Judicial Deception (Kiyoko & Ryan Dodson) – 42 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

00152425.WPD

# I. JURISDICTION AND VENUE.

1. Plaintiffs' claims arise under 42 U.S.C. § 1983. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2. Plaintiffs' claims arise out of, *inter alia*, acts of personnel employed by the County of Los Angeles, causing injury to Plaintiffs in the County of Los Angeles. Accordingly, venue is proper within the Central District of California.

# II. PARTIES.

3. Plaintiffs Emanuel Padilla, Christina Astorga, Hugo Padilla, Kiyoko Dodson and Ryan Dodson are individuals. At all times relevant hereto, except for Kiyoko and Ryan Dodson, Plaintiffs were and are residents of the County of Los Angeles. Plaintiff Dodsons (they are husband and wife) were and are residents of the County of Orange.

4. At all times material herein, defendant County of Los Angeles ("LA County") was and is a public entity duly organized under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the County and the Los Angeles County Sheriff's Department.

5. At all times material herein, defendant Los Angeles County Sheriff's Department ("LASD"), is a public entity subject to suit under 42 U.S.C. § 1983 (*Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001)).

6. Plaintiffs name the LASD as a separate defendant for two reasons. First, Plaintiffs are informed and believe and based thereon allege that LA County Sheriff Alex Villanueva may claim he is *not* a policymaker for defendant LA County. However, Plaintiffs are further informed and believe and based thereon allege that should Villanueva make that claim, he will nevertheless admit he *is* the policymaker with respect to his own department, defendant LASD. Thus, Villanueva's self-admitted status as a policymaker for defendant LASD will make that defendant subject to liability should it be determined that Villanueva is responsible for policies that violated the constitutional rights of Plaintiffs.

7. Second, there is disagreement between the Ninth Circuit and the California

Supreme Court on whether a California sheriff is a state or county policymaker for § 1983 purposes. In *Brewster v. Shasta County*, 275 F.2d 803 (9th Cir. 2001), and *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001), the Ninth Circuit held that California sheriffs are agents of their employing county for § 1983 purposes. The California Supreme Court, in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 828-39 (2004), disagreed with the Ninth Circuit, holding instead that a California sheriff is not an agent of his employing county for purposes of § 1983 liability. Should it ultimately be determined that *Venegas* correctly states the law on this point, Plaintiffs are informed and believe that Villanueva will nevertheless remain a policymaker for his own department, defendant LASD. Since defendant LASD is *not* an arm of the state for purposes of immunity under the Eleventh Amendment (see *Streit*, 236 F.3d at 556-57), Plaintiffs can still prevail against Villanueva in his official capacity and defendant LASD notwithstanding *Venegas*.

8. Defendants LA County and LASD are "persons" subject to suit within the meaning of Title 42, U.S.C. § 1983 under *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). Collectively, these two defendants are referred to as "Entity defendants."

9. Defendant Alex Villanueva ("Villanueva"), an individual, at all times material hereto was and is the LA County Sheriff. Plaintiffs are informed and believe and based therein allege that Villanueva is a policy maker for both defendants LA County *and* LASD. Plaintiffs sue Villanueva in his individual and official capacities.

10. At all times material herein, Entity defendants were responsible for the employment, training, and supervision of the actions, conduct, policies, practices, and customs of the employees and agents of the LA County, including LASD and all of its deputies and members. At all times material herein, Entity defendants were responsible for assuring that the actions, conduct, policies, procedures, and customs of the LASD complied with the laws and the Constitutions of the United States and the laws of the State of California.

00152425.WPD

11. Plaintiffs are informed and believe and based thereon allege that Nathan Deboom (#606645), Aaron Escobedo (#621443), Christopher Gentner (#437349), Jose Hurtado (#552712), Mikah Lopez (#652884), Charles L. McDaniel (the LASD refuses to provide his employee number), Juan Meza (#484495), Michael Mileski (#424383), Ramon Munoz (#499029), Rovert Okamoto (#511813), Jose Ramirez (#503608), Mark Reyes (#528504), P.R., Adrian Ruiz (#519554) and Spencer Zagurski (#550493) are all individuals and were, at all times relevant hereto, LASD deputies. These individual deputy sheriffs are sued in their individual capacities.

12. Regarding defendant P.R., although Plaintiffs' counsel knows her name and employee number (Plaintiffs themselves do not) this complaint identifies her only by her initials because of a protective order issued earlier this year by Magistrate Judge Alicia G. Rosenberg in *Christina Astorga et al. v. County of Los Angeles et al.*, no. 2:20-cv-9805-AB-AGR. That protective order precludes Plaintiffs' counsel from publicly disclosing P.R.'s identity. But for that protective order (which the plaintiffs in no. 2:20-cv-9805 opposed) this complaint would have identified P.R. by her full name. In no. 2:20-cv-9805, Plaintiffs will seek leave from Magistrate Judge Rosenberg to identify P.R. by her true name in this lawsuit. In the meantime, when Plaintiffs serve this complaint on P.R., Plaintiffs will serve it with a "Notice of Pending Lawsuit" that specifically identifies P.R. by her true name (but the "Notice of Pending Lawsuit" will *NOT* be filed with the Court as a public document absent relief from the aforementioned protective order).

13. The true names of defendants DOES 1 through 10, inclusive, are not now known to Plaintiffs who therefore sue these Defendants by fictitious names. Upon ascertaining the true name of a DOE Defendant, Plaintiffs will amend this complaint, or seek leave to do so, by substituting same for the fictitious name. Plaintiffs are informed and believe, and based thereon allege, that each DOE Defendant is in some manner responsible for the injuries and damages herein complained of.

14. At all times material herein, defendants were each acting as the employee, agent, representative, and officer of every other defendant herein, and within the course

-4-

and scope of such employment and agency. All defendants were acting under color of state law.

## III. FACTS COMMON TO ALL CLAIMS.

15. Alarmed by police uses of force causing the deaths of individuals under circumstances suggesting officers may be guilty of unjustified homicides (e.g., March 13, 2020 shooting death of Breonna Taylor by Louisville officers; May 25, 2020 death of George Floyd while restrained by Minneapolis police officers; June 18, 2020 LASD shooting death of Andrés Guardado; August 31, 2020 LASD shooting death of Dijon Kizzee), in 2020 Plaintiffs attended various protest events calling attention to police uses of force. In particular, Plaintiffs attended protests that were directed to the LASD and its management's apparent tolerance for deputy misconduct causing grievous injuries and deaths under questionable circumstances.

16. Plaintiffs are informed and believe and based thereon allege that LASD's upper management, rather than accepting that peaceful, spirited protests are a defining feature of life in this Country, notwithstanding the discomfort and embarrassment such protests can cause to those in power, elected to retaliate whenever possible. The retaliation ranged from bogus arrests and bookings on minor, misdemeanor, never-to-be-filed, non-violent charges, to gratuitous infliction of injuries via so-called "less-lethal" stingball and smoke grenades, blastball, super sock rounds and the like, wrongful seizures and withholding of property, wrongfully seizing and searching persons' electronic devices such as smart phones, fabricating evidence to support false serious felony charge(s), and wrongful incarcerations, all as punishment for exercising free speech rights.

17. Plaintiffs are informed and believe and based thereon allege that the foregoing wrongful acts were pursuant to a conspiracy involving both defendants and non-defendants. Non-defendants include unnamed and/or unknown LASD management personnel, and the law firm representing defendants in *Astorga et al v. County of Los Angeles et al.*, U.S.D.C. no. 2:20-cv-9805 AB (AGRx). Among the wrongful acts performed in furtherance of this conspiracy are the following:

A. The law firm has repeatedly and recently told the federal court there is an "ongoing criminal investigation" concerning property items the LASD seized September 8 and 25, 2020 (5/31/22 *Astorga* RT 9:21-22 & 10:11-12) even though on July 8, 2021, the *same* law firm told the Ninth Circuit "there is no active ongoing [criminal] investigation as to those particular incidents [property items seized September 8 and 25, 2020]." *See* https://youtu.be/CokvFmvPERQ (relevant portion of law firm's argument to the Ninth Circuit on July 8, 2021, in No. 21-55059).

B. On January 7, 2021 in a filing approved and sanctioned by the law firm, LASD Capt. Eduardo Hernandez *falsely* informed the *Astorga* district court that he (Hernandez) had personal knowledge of ongoing criminal investigation(s) involving the Plaintiffs when, in fact, Hernandez had no such knowledge.

C. Even though the law firm has no criminal law enforcement responsibilities, *i.e.,* the law firm is *not* a prosecutor, is not employed or retained as either municipal prosecutor or as an adjunct or representative of the Los Angeles County District Attorney's office but instead was retained solely to defend the interests of the County and its employees as defendants in *civil* litigation, the law firm has invoked state criminal court proceedings on fabricated claims of ongoing criminal investigation(s) in order to secure an advantage in *civil* litigation by depriving Plaintiffs of evidence Plaintiffs seek to prove their claims for compensation under 42 U.S.C. § 1983 and state law.

D. To secure an advantage in *civil* litigation, the law firm has accessed confidential records of state court *criminal* proceedings without complying with state law for accessing such confidential records. This is not the first time this law firm has violated state law to access confidential records to secure a tactical advantage in civil litigation. *Gonzalez v. Spencer*, 3336 F.3d 832 (9th Cir. 2003) (Under its former name, this same law firm illegally accessed confidential juvenile records in order to secure a tactical advantage in civil litigation.).

00152425.WPD

**A. The Claims of Emanuel Padilla.**

18. On June 18, 2020, LASD Deputy Miguel Vega was one of two deputies who shot and killed 18-year old Andrés Guardado as he was fleeing from the deputies. The shooting sparked numerous protests as it was believed by many that the shooting was unjustified (Guardado was shot multiple times in the back with the trajectory of the fatal gunshot into his heart suggesting he was kneeling when shot).

19. One such protest occurred July 30, 2020, outside the Covina home of Deputy Miguel Vega. Law enforcement personnel were also present at the location. Although the protest was non-violent and lawful (no arrests were made) Plaintiffs are informed and believe and based thereon allege that LASD management personnel were incensed and alarmed that a protest would occur outside a deputy's *home*.

20. Plaintiffs are informed and believe and based thereon allege that one or more LASD deputies were present at the July 30, 2020 protest to take note of and identify, if possible, participants in that protest *regardless* of whether the protester had committed or threatened to commit, an illegal or violent act. Plaintiffs are informed and believe that LASD personnel were profiling, or attempting to profile, "repeat" protesters.

21. Plaintiff Emanuel Padilla was in attendance at the July 30 protest outside of Vega's home. Furthermore, Emanuel Padilla has a physical appearance that literally makes him stand out in a crowd – he's over 6'4" tall and has very distinctive facial hair (or as one deputy wrote, "unusually tall height and distinctive physical appearance" that makes him "immediately recognizable"). Plaintiffs are informed and believe and based thereon allege that law enforcement personnel took notice of Emanuel Padilla's presence at the protest outside Vega's home.

22. Sunday afternoon, November 15, 2020, in the vicinity of Willowbrook Avenue and Compton Boulevard, a planned protest occurred near Compton City Hall. As with earlier protests, this too was sparked by police uses of deadly force and in particular, the aforementioned shootings by LASD deputies. Among the attendees was Plaintiff Emanuel Padilla. Also present were LASD deputies from the LASD major crimes bureau. Plaintiffs

are informed and believe and based thereon allege that these major crimes bureau deputies were present to identify and target individuals whom the deputies believed were "repeat" protesters.

23. At this protest two individuals, whom LASD officials later claimed were identified as Jasmine Lomax and Krizia Berg, at one point dragged a flexible wire barricade across the street before dropping it on railroad tracks (according to the Compton deputy who authored the LASD Incident Report). The Incident Report's author – who was not assigned out of the major crimes bureau – reported he personally observed the entire incident involving the dragging and placement of the wire barricade. He reported there were only *two* persons who grabbed the wire barricade, and described both persons in terms that (a) matched Lomax and Berg's respective physical descriptions, while (b) *excluding* Plaintiff Emanuel Padilla as a suspect or a person who had any contact with the wire barricade. According to this Compton deputy, the two suspects (later identified as Lomax and Berg) left the scene without being detained or identified (because, according to the Compton deputy, there were no patrol units available to stop the two).

24. One of the major crimes bureau detectives present at the Compton protest was defendant Gentner. Plaintiffs are informed and believe and based thereon allege that as of November 15, 2020, the LASD had already identified Plaintiff Emanuel Padilla as a "repeat" protester, and that Gentner was aware that this Plaintiff had been so identified, including his name and address. Plaintiffs are informed and believe and based thereon allege that at no time during the November 15 protest did Gentner observe Emanuel Padilla to commit, or attempt to commit, a criminal act, whether by himself or in conjunction with others. Plaintiffs are informed and believe and based thereon allege that if in fact Gentner observed Emanuel Padilla to have committed or attempted to commit a criminal act on November 15, Gentner's observations and belief would have been documented in an appropriate LASD report *dated **no later than November 16, 2020*** and which would have identified Emanuel Padilla if not by name, then at least by physical description. Gentner, Plaintiffs are informed and believe, made no such report.

00152425.WPD

25. On November 18, 2020, Plaintiff Emanuel Padilla attended another protest outside a residence in La Habra Heights. Also present were deputies from the LASD major crimes bureau, including defendant Gentner. The protest was peaceful and lawful (no arrests were made). At about 4:00 p.m., via his car Emanuel Padilla left the protest scene. Plaintiffs are informed and believe and based thereon allege that defendant Gentner, upon recognizing Emanuel Padilla as someone Gentner and the LASD had classified as a "repeat" protester, stopped Mr. Padilla as he began leaving the scene. Gentner would later claim he stopped and arrested Mr. Padilla on felony charges of Cal. Penal Code § 218 (attempted train derailment), and § 587(b) (placing obstruction upon railroad tracks), as Gentner claimed he saw Emanuel Padilla commit these violations on November **15**, 2020, or three days earlier, at the Compton protest. Gentner claimed that Emanuel Padilla was one of **three** individuals who dragged the flexible wire barricade across the street and placed it on the railroad tracks; *i.e.*, the same incident described in the 11/16/20 Incident Report authored by a different deputy assigned out of the Compton station, but in which that deputy reported there were only **two** suspects, neither of whom was Emanuel Padilla.

26. In short, defendant Gentner fabricated out of whole cloth his claim that Emanuel Padilla committed crimes on November 15, 2020, when in fact Gentner knew Mr. Padilla committed no crimes on November 15, 2020. Plaintiffs are informed and believe and based thereon allege that numerous LASD deputies, including defendant Sgt. Michael Mileski (#424383) and other supervisors, knew that Gentner had fabricated the facts for arresting Mr. Padilla. Plaintiffs are informed and believe and based thereon allege that despite this knowledge, no one within the LASD called attention to Gentner's obvious fabrications but instead defended the fabrications because:

A. LASD had identified Plaintiff Emanuel Padilla as a "repeat" protester for whom the LASD sought to retaliate against via an unlawful arrest on fabricated charges;

B. LASD was incensed that Plaintiff Emanuel Padilla had protested

00152425.WPD

(lawfully and peacefully) outside the home of Deputy Vega on July 30, 2020; and

C. LASD and defendant Villanueva were particularly motivated against Emanuel Padilla because on November 18, 2020, Plaintiff sought to protest (lawfully and peacefully) outside the La Habra Heights home of **Sheriff Villanueva** (a fact Gentner did not disclose in his report).

27. The same evening that defendant Gentner arrested Plaintiff Emanuel Padilla on the above fabricated charges, defendant Gentner prepared a search warrant application with supporting affidavit to search Emanuel Padilla's home. Upon Gentner's submission of the warrant application and supporting Gentner affidavit, on November 18, 2020 Superior Court Judge Rubiya Nur approved the warrant Gentner requested. Plaintiffs are informed and believe and based thereon allege that in his search warrant affidavit submitted to Judge Nur, Gentner falsely claimed Emanuel Padilla committed criminal acts on November 15, 2020 at the Compton protest, acts which Gentner claimed in his affidavit necessitated obtaining a warrant to search Emanuel Padilla's home. Plaintiffs are informed and believe and based thereon allege that Gentner also intentionally and deliberately omitted material information from his affidavit which, if disclosed to Judge Nur, likely would have caused Judge Nur *not* to issue the search warrant. Plaintiffs are informed and believe and based thereon allege that the omitted material information included (but was not limited to) that other deputies who observed the November 15, 2020 Compton protest, reported that Plaintiff Emanuel Padilla was not seen or believed to have had involvement in any criminal act, or attempted criminal act, and that *video* evidence established that Emanuel Padilla had *not* committed the criminal acts Gentner alleged in his report. As a result, Gentner caused Emanuel Padilla's home to be searched and property seized pursuant to a warrant that lacked probable cause for entering and searching Emanuel Padilla's home, and was also overbroad in violation of the Fourth Amendment.

28. Plaintiffs are informed and believe and based thereon allege that in reliance upon Gentner's fabricated claims that he observed Emanuel Padilla comm crimes on

November 15, 2020 – crimes of which if Mr. Padilla was convicted he would be imprisoned in state prison for life without possibility of parole – the district attorney filed felony criminal charges against Mr. Padilla on November 23, 2020 (L.A.S.C. no. TA153148).

29. On December 8, 2020, the district attorney dismissed all charges against Mr. Padilla because, Plaintiffs are informed and believe and based thereon allege, the newly elected district attorney (who was not yet in office when the case was filed) realized that Gentner had fabricated his account of events on November 15, 2020 at the Compton protest, and that as confirmed by both video evidence and the 11/16/20 Incident Report, in fact Mr. Padilla was innocent of any crime.

30. Based upon Gentner's fabricated claims, Plaintiff Emanuel Padilla was incarcerated in the LA County Jail on no-bail felony charges from November 18, 2020, to December 8, 2020.

31. Even though all charges against Emanuel Padilla have been dismissed, and even though it has now been more than 18 months since the dismissal, the LASD refuses to return to Plaintiff Emanuel Padilla any of the property it seized from his home on November 18, 2020, and refuses to provide any notice of hearing or opportunity for Mr. Padilla to reclaim his property. The ongoing seizures and refusal to provide notice and hearing are violations of Emanuel Padilla's rights under the Second, Fourth and Fourteenth Amendments.

32. Plaintiffs are informed and believe and based thereon allege that following the December 8, 2020 dismissal of charges against Emanuel Padilla, the news media, including the *Los Angeles Times*, reported on the dismissal. The news media reported that Gentner's account of Emanuel Padilla's alleged actions was contradicted by both other deputies *and* video evidence. Plaintiffs are informed and believe and based thereon allege that LASD upper management, including Sheriff Villanueva, were aware of these news accounts, but despite being so aware, took no action to ascertain if, in fact Gentner had fabricated his claims reported in Gentner's November 19, 2020 supplementary report.

00152425.WPD

**B. The Claims of Christina Astorga and Hugo Padilla.**

33. Plaintiffs Christina Astorga and Hugo Padilla attended the September 8, 2020 protest in South Los Angeles, called "Justice for Dijon Kizzee." Christina Astorga attended both as an individual and as a representative for Wall of Vets, to support holding accountable those responsible for the death of Dijon Kizzee. As she had done in other similar events, using her smartphone Ms. Astorga intended to record and livestream video. Plaintiff Astorga also planned to use her smartphone to update with information concerning the "Justice for Dijon Kizzee" protest, the social media profile she then maintained for "Wall of Vets - Los Angeles."

34. Hugo Padilla attended the protest to document and broadcast the protest. As he has done on other occasions at protests for racial justice and against police violence, Plaintiff was livestreaming a video with audio narration to viewers on Youtube.com, so people not in attendance could observe what was happening in real time. Plaintiff was riding his bicycle as he livestreamed the protest. Plaintiff was wearing a bicycle helmet which prominently displayed "PRESS."

35. Plaintiffs are informed and believe and based thereon allege that at about 9:00 p.m., LASD personnel decided to break up the protesters who at about this time were gathered at the intersection of Imperial Highway and Normandie Avenue. As one hears on Plaintiff Hugo Padilla's livescream video, the LASD declared an unlawful assembly, and instructed the protesters to move either north or south on Normandie Avenue, or west on Imperial Highway.

36. As established by video evidence, the protesters could not move south on Normandie because LASD deputies blocked that pathway; consequently, the protesters dispersed north along Normandie Avenue. Just before the protesters began dispersing, Plaintiff Christina Astorga, coming from another location, joined the protesters near the Normandie and Imperial intersection. Although Ms. Astorga had not heard any dispersal order, she could tell from the movements of both deputies and protesters that the deputies wanted protesters to move north on Normandie. Along with others Ms. Astorga began

00152425.WPD

walking north on Normandie, as deputies followed behind.

37. At about the same time, Plaintiff Hugo Padilla was on his bicycle livestreaming the events but from a distance so as not be part of the crowd of protesters or interfere with the deputies' movements towards the protesters. As the protesters began walking north on Normandie, riding his bicycle Hugo Padilla rode west in an alley immediately north of Imperial and parallel to Imperial. That is, Hugo Padilla was riding *away from* where the protesters and deputies were. Hugo Padilla did so in order to get ahead of where the protesters and deputies were headed (north on Normandie). Hugo Padilla eventually turned right on Denker Street, headed north, then turned right on 110th Street, an east / west street that intersects Normandie about one-third mile north of the Imperial and Normandie intersection. See **Exhibit A**, a map reflecting via a red line the route Hugo Padilla took, with the red arrow pointing at the approximate location where Hugo Padilla was shot and arrested, one-half a mile from the intersection of Imperial and Normandie.

38. As Hugo Padilla was riding eastbound on 110th Street (past the intersection of 110th Street and Normandie Avenue) and was at or approaching 1234 West 110th Street, from his left side one or more deputy sheriffs intentionally fired at him blastball and/or super sock rounds, several of which struck Hugo Padilla, injuring him and knocking him off his bicycle and onto the street. Per Mr. Padilla's livestream video recording, immediately before and during the shooting, no deputies are visible and no deputy is heard giving any commands or warnings. Per the video there is no confrontation of any type occurring between the protesters and deputies. See the video accessible at the following link: https://youtu.be/ht91mpDiPaY.

39. Numerous deputies then surrounded Hugo Padilla, roughly handcuffing and arresting him, ignoring his pleas of non-resistance and cooperation. When the deputy(ies) shot him, Hugo Padilla was holding in his hand a Samsung smartphone with which he was livestreaming the events. In his pants pocket he had a second smartphone, an Apple iPhone. The iPhone was still Mr. Padilla's pants pocket when deputies transported and delivered him to the South Los Angeles Sheriff's Station for booking, where a deputy

took possession of the iPhone.

40. At about the same time that one or more deputies shot Hugo Padilla, Christina Astorga, having walked away from the vicinity of the Imperial Highway and Normandie Avenue intersection (see **Exhibit A** and the blue doted line showing the route Ms. Astorga took) was now fleeing from the deputies. She was fleeing because deputies were shooting so-called "less-lethal" rounds at the protesters. At about 1234 West 110th Street, Ms. Astorga fled into the curtilage of an apartment complex (as someone who appeared to be a resident opened a gate, allowing Ms. Astorga and others to enter and take refuge there). Deputies pursued Ms. Astorga, with one or more deputies intentionally firing at her, the so-called "less-lethal" rounds. The rounds struck Ms. Astorga from behind, striking her left side including buttocks and left leg. At no time had Ms. Astorga threatened anyone, including any deputy. At no time had Ms. Astorga tried to injure anyone, including any deputy. Before being shot, at no time did Ms. Astorga hear any warnings from any deputy.

41. After she was shot and injured, deputies arrested Ms. Astorga. As she was arrested, Ms. Astorga was holding her smart phone and attempted to provide a live stream to her Twitter account. A female deputy noticed Ms. Astorga was filming and took the phone from her. A male deputy pushed her against a wall, twisting her right arm upwards even though Ms. Astorga was telling the deputies she had a military service-connected injury to her arm and was pleading that the deputies not bend her arm upwards. The deputies ignored her requests.

42. At no time did either Christina Astorga or Hugo Padilla resist or delay any deputy, nor did they disobey any command or interfere with deputies' efforts to disperse the crowd.

43. Christina Astorga and Hugo Padilla were arrested and booked on a misdemeanor charge of violating Cal. Pen. Code § 409 (remaining present at the place of any riot, rout, or unlawful assembly after being lawfully warned to disperse). There was no probable cause for their arrests because (a) the warning to disperse was unlawful and

(b) the supposedly unlawful assembly was at the intersection of Imperial Highway and Normandie Avenue, whereas both Ms. Astorga and Mr. Padilla had left that area many minutes earlier. And when they both were shot and arrested, they were a half-mile or more away from the Imperial and Normandie intersection.

44. Plaintiffs are informed and believe and based thereon allege that defendant Mark Reyes (#528504) arrested Christina Astorga, an arrest approved by defendants Sgts. Ramon Munoz (#499029) and Juan Meza (#484495). At the time of the arrest and the later approval by the two sergeants, Plaintiffs are informed and believe and based thereon allege that all three defendants knew that Ms. Astorga had *not* in fact committed any criminal act justifying her arrest.

45. Plaintiffs are informed and believe and based thereon allege that defendant Mikah Lopez (#652884) arrested Hugo Padilla, an arrest approved by defendants Sgts. Ramon Munoz (#499029) and Juan Meza (#484495). At the time of the arrest and the later approval by the two sergeants, Plaintiffs are informed and believe and based thereon allege that all three defendants knew that Mr. Padilla had *not* in fact committed any criminal act justifying his arrest.

46. In a further effort to retaliate against and humiliate Hugo Padilla, Plaintiffs are informed and believe and based thereon allege that defendant DOES refused to promptly release Mr. Padilla following his booking at the South Los Angeles Sheriff's Station pursuant to Cal. Pen. Code § 853.6 as the circumstances of his arrest and LASD policy called for. Instead, DOES had Mr. Padilla transferred to the LA County jail downtown so as to ensure he would be held in custody several days and subjected to the humiliation of processing at IRC and housed at the Mens Central Jail and/or Twin Towers.

47. No charges were ever filed against Christina Astorga or Hugo Padilla arising out of the events of September 8, 2020.

48. On September 9, 2020, defendants P.R. and DOES sought and obtained a warrant for the seizures of property items belonging to Christina Astorga and Hugo Padilla, and the searches of the smartphones belonging to these Plaintiffs that were seized

when they were arrested on September 8, 2020. Plaintiffs are informed and believe and based thereon allege that defendants P.R. and DOES fabricated material facts and omitted material facts from the affidavits in support of the warrant by:

A. Falsely claiming that the property belonging to Christina Astorga or Hugo Padilla were used as a means of committing a felony when in fact these defendants had no information that the property items belonging to these Plaintiffs were so used;

B. Falsely claiming that the property items as possessed by Christina Astorga or Hugo Padilla were used with the intent as means for committing a public offense, or delivered to another for the purpose of concealing the property and preventing its discovery by law enforcement;

C. Falsely claiming that the property as possessed by Christina Astorga or Hugo Padilla tends to show that a felony has been committed or that a particular person has committed a felony when in fact these defendants had no information that the property belonging to Christina Astorga or Hugo Padilla so indicated;

D. Omitted informing the issuing magistrate that defendants P.R. and DOES had *no* information that Christina Astorga or Hugo Padilla had any involvement of any type in any criminal activity beyond the fabricated claim of a misdemeanor violation of Cal. Pen. Code § 409 (failure to disperse);

E. Omitted informing the issuing magistrate that defendants P.R. and DOES had *no* information that Christina Astorga or Hugo Padilla or their respective items of personal property had an association of any type, whether knowingly or unknowingly, with other persons suspected of having committed state or federal criminal violations of law.

49. Since the issuance of the warrant on September 9, 2020 and continuing up to the present, as alleged in paragraph 17 *supra*, defendants DOES and the law firm law representing defendants in *Astorga et al v. County of Los Angeles et al.*, U.S.D.C. no. 2:20-cv-9805 AB (AGRx), have performed acts in furtherance of a fabricated claim of

an ongoing criminal investigation so as to wrongfully thwart Plaintiffs Christina Astorga and Hugo Padilla the legal means to obtain redress for the wrongful seizures and withholding of their personal property.

**C. The Claims of Kiyoko and Ryan Dodson.**

50. Plaintiffs Ryan Michael Dodson and Kiyoko Dodson, husband and wife, participated in the West Hollywood September 25, 2020 protest. Plaintiff Michael Dodson was driving Plaintiffs' truck, while Plaintiff Kiyoko Dodson was on foot, walking and marching with other demonstrators. Shortly before 10:00 p.m., Ryan Dodson was driving the Dodsons' truck, leading a group of people walking behind as he drove slowly on Hammond Street before turning onto Sunset Boulevard, headed east. Mr. Dodson was driving the truck in front so as to protect those on foot behind the truck from LASD's retaliatory force, such as "rubber bullets" and pepper balls, that Plaintiffs are informed LASD deputies are known to fire indiscriminately at protesters. Plaintiffs are informed and believe and based thereon allege, LASD deputies use this retaliatory force without regard to any actual threat or safety hazard protesters present.

51. On Sunset, Mr. Dodson stopped his truck to permit those on foot behind the truck, to catch up. An LASD armored transport then pulled up and stopped in front of Mr. Dodson's truck. Deputies ordered Mr. Dodson out of his truck; Mr. Dodson peacefully and promptly complied. The deputies rushed Mr. Dodson, seizing him as they roughly pushed him up against his truck. Deputies searched and handcuffed him, before placing him in a patrol car.

52. LASD deputies transported Ryan Dodson to the West Hollywood station where he was booked and jailed (booking number 6019287). Deputies also directed that his truck and its contents be seized. At the deputies' direction, All City Tow, a privately owned company that contracts with the LASD for the towing and storage of vehicles at the direction of LASD employees, towed the Dodsons' truck. Plaintiffs are informed and believe and based thereon allege that according to West Hollywood Station Capt. Edward C. Ramirez, deputies seized and had the Dodsons' truck towed *not* for any evidentiary

purpose but for community caretaking justification – "to protect [the] safety for protesters, community members and the commercial area."

53. Plaintiffs are informed and believe and based thereon allege that although there was no purpose served by the LASD maintaining possession of the Dodsons' truck and its contents beyond a Fourth Amendment community caretaking justification, defendants Christopher Gentner (#437349) and DOES directed that the truck and its contents *not* be released to the Dodsons' despite the Dodsons' repeated requests for their truck's return.

54. Plaintiffs are informed and believe and based thereon allege that at the direction of Christopher Gentner (#437349) and DOES, over the protests of the Dodsons, the LASD kept custody of the Dodsons' truck and its contents from September 25, 2020 to October 13, 2020, without seeking any judicial authorization and absent any exception to the Fourth Amendment's warrant requirement.

55. On October 13, 2020, defendants Christopher Gentner (#437349) and DOES belatedly sought and obtained warrants for the continuing seizures of the Dodsons' truck and its contents, and searching thereof. Plaintiffs are informed and believe and based thereon allege that defendants Gentner and DOES fabricated material facts and omitted material facts from the affidavits in support of the warrant by:

A. Falsely claiming that the Dodsons' truck and its contents were "used as a means of committing a felony" when in fact these defendants had no information that the truck and its contents were so used;

B. Falsely claiming that the Dodsons' truck and its contents "tends to show that a felony has been committed or that a particular person has committed a felony" when in fact these defendants had no information that the truck and its contents so indicated;

C. Omitted informing the issuing magistrate that the only crimes for which either Dodson was issued a citation, were an alleged misdemeanor violation by Ryan Dodson of Cal. Pen. Code § 407 (unlawful assembly) and the traffic infraction Cal. Veh. Code § 23103(a) (reckless driving);

D. Omitted informing the issuing magistrate that defendants Gentner and DOES had *no* information that the Dodsons or their property (the truck and its contents) had an association of any type, whether knowingly or unknowingly, with other persons suspected of having committed state or federal  criminal violations of law.

56. Plaintiffs are further informed and believe and based thereon allege that on or before September 25, 2020, one or more policy makers for LA County and/or LASD, decided that for persons arrested as described above, the LASD should take and withhold the person's personal property  –  particularly smartphones  –  and *not* release or return the property to the owners upon their release from custody. Plaintiffs are informed and believe that the pretextual reason LASD decided to refuse to return persons' property, was that the property would be held as "evidence" related to a (fabricated) claim of an ongoing criminal investigation.

57. Since the issuance of the October 13, 2020 warrants and continuing up to the present, defendants Gentner, DOES and the law firm law representing defendants in *Astorga et al v. County of Los Angeles et al.*, U.S.D.C. no. 2:20-cv-9805 AB (AGRx), have performed acts in furtherance of a fabricated claim of an ongoing criminal investigation so as to wrongfully thwart Plaintiffs Kiyoko and Ryan Dodson the legal means to obtain redress for the wrongful seizures and withholding of their personal property.

**COUNT ONE**

(False Arrest / Malicious Prosecution -- Plaintiff Emanuel Padilla)

(42 U.S.C. § 1983 / Fourth & Fourteenth Amendments)

58. By this reference Plaintiff Emanuel Padilla, on behalf of himself only, re-alleges and incorporates previous paragraphs 1 through 57 as if fully set forth herein.

59. The only defendants sued on this cause of action are LA County, LASD, Alex Villanueva, Christopher Gentner (#437349), Sgt. Michael Mileski (#424383) and DOES.

60. Defendant Gentner's fabricated factual claims of Emanuel Padilla's actions on

00152425.WPD

November 15, 2020, fabrications that received the knowing approval of defendant Mileski and others, proximately caused Plaintiff's arrest and incarceration in the Los Angeles County jail with no bail. Furthermore, Gentner's fabrications resulted in the filing and prosecution against Emanuel Padilla of felony charges for which if convicted, would have resulted in Mr. Padilla's imprisonment for life without the possibility of parole.

61. The arrest and criminal prosecution of Plaintiff Emanuel Padilla was based on material facts knowingly fabricated, or in reckless disregard of the truth or falsity of any such facts, thereby entitling this Plaintiff to recover compensatory damages in an amount according to proof.

62. The acts alleged herein were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva as alleged above, and entitles Plaintiff Emanuel Padilla to recover punitive damages as against individual defendants named on this cause of action.

**COUNT TWO**

(Judicial Deception -- Plaintiff Emanuel Padilla)

(42 U.S.C. § 1983 / Second, Fourth & Fourteenth Amendments)

63. By this reference Plaintiff Emanuel Padilla, on behalf of himself only, re-alleges and incorporates previous paragraphs 1 through 62 as if fully set forth herein.

64. The only defendants sued on this cause of action are LA County, LASD, Alex Villanueva, Christopher Gentner, and DOES.

65. The procurement of the November 18, 2020 warrant to search Emanuel Padilla's home and seize property within, violated the Second and Fourth Amendments in that the warrant affidavit (a) asserted material facts known to be untrue or in reckless disregard for the truth or falsity of the purported facts, and (b) omitted known material facts which if disclosed, would have likely resulted in the magistrate *not* issuing the requested warrant.

66. Plaintiff is informed and believes and based thereon alleges that the acts alleged

00152425.WPD

above were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva, thus entitling Plaintiff Emanuel Padilla to recover compensatory damages against all defendants on this cause of action.

67. Plaintiff is informed and believes and based thereon alleges that the acts alleged herein were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva as alleged above, and entitles Plaintiffs to recover punitive damages as against individual defendants.

## COUNT THREE

(False Arrest -- Plaintiffs Christina Astorga and Hugo Padilla)

(42 U.S.C. § 1983 / Fourth & Fourteenth Amendments)

68. By this reference Plaintiffs Christina Astorga and Hugo Padilla, on behalf of themselves only, re-allege and incorporate previous paragraphs 1 through 57 as if fully set forth herein.

69. The only defendants sued on this cause of action are Mark Reyes (#528504), Mikah Lopez (#652884), Sgts. Ramon Munoz (#499029) and Juan Meza (#484495), and DOES.

70.  Defendants' arrests of Plaintiffs Christina Astorga and Hugo Padilla were effected in the absence of probable cause to arrest, and were based on facts that either the defendants fabricated, or in reckless disregard of the truth or falsity of any such facts: Therefore:

A. As against defendants Mark Reyes (#528504), Sgts. Ramon Munoz (#499029) and Juan Meza (#484495) and DOES, under 42 U.S.C. § 1983 Plaintiff Christina Astorga is entitled to recover compensatory and punitive damages from these defendants in an amount according to proof.

B. As against defendants Mikah Lopez (#652884), Sgts. Ramon Munoz (#499029) and Juan Meza (#484495) and DOES, under 42 U.S.C. § 1983 Plaintiff Hugo Padilla is entitled to recover compensatory and punitive damages from these defendants in an amount according to proof.

00152425.WPD

**COUNT FOUR**

(Excessive Force -- Plaintiffs Christina Astorga and Hugo Padilla)

(42 U.S.C. § 1983/ Fourth & Fourteenth Amendments)

71. By this reference Plaintiffs, on behalf of themselves only, re-allege and incorporate all previous and following paragraphs 1 through 57 as if fully set forth herein.

72. The only defendants sued on this cause of action are Nathan DeBoom (#606645), Jose Hurtado (#552712), Jose Ramirez (#503608), Aaron Escobedo (#621443), Rovert Okamoto (#511813), Adrian Ruiz (#519554), Spencer Zagurski (#550493), Charles L. McDaniel and DOES.

73. Plaintiffs are informed and believe and based thereon allege that one or more of the above deputies and/or DOES (but not McDaniel) – though *not* all -- fired the so-called less lethal rounds that struck Plaintiffs Christina Astorga and Hugo Padilla. However, Plaintiffs cannot identify which specific deputy(ies) in this group fired the rounds that struck Plaintiffs Christina Astorga and Hugo Padilla because, Plaintiffs are informed and believe and based thereon allege:

A. In violation of LASD policy, the deputy(ies) who fired the rounds did *not* document their respective use(s) of force or justification therefor, while the LASD did not identify and continues to refuse to identify the individual persons against whom the force was used; and

B. The only documentation the LASD prepared were reports stating that deputies identified in paragraph 72 above, used physical force (or authorized its use in the case of defendant McDaniel) without identifying which deputy used force against which person.

74. Although the failures to document described above violated LASD formal written policy for documenting uses of force, these failures to document were nevertheless approved by LASD supervisory personnel including, Plaintiffs are informed and believe and based thereon allege, Sheriff Alex Villanueva.

75. Plaintiffs are informed and believe and based thereon allege that defendant

-22-

McDaniel, an LASD lieutenant present at the locations where force was used on September 8, 2020, approved, ratified and may have even directed the uses of force against Plaintiffs Christina Astorga and Hugo Padilla.

76. These defendants' uses of force against Plaintiffs Christina Astorga and Hugo Padilla were effected in the absence of any justification for using the force as alleged above, and was used in reckless disregard of any facts that defendants knew would otherwise be necessary to justify the uses of force. Therefore, under 42 U.S.C. § 1983 Plaintiffs Christina Astorga and Hugo Padilla are entitled to recover compensatory and punitive damages from these defendants in an amount according to proof.

### COUNT FIVE

(Judicial Deception -- Plaintiffs Christina Astorga and Hugo Padilla)

(42 U.S.C. § 1983 / Fourth & Fourteenth Amendments)

77. By this reference Plaintiffs Christina Astorga and Hugo Padilla, on behalf of themselves only, re-allege and incorporate previous paragraphs 1 through 57 and paragraphs 65 through 67 as if fully set forth herein.

78. The only defendants sued on this cause of action are LA County, LASD, Villanueva, P.R. and DOES.

79. The procurement of the September 9, 2020 warrant to seize and search the property items belonging to Plaintiffs Christina Astorga and Hugo Padilla violated the Fourth Amendment in that the warrant affidavit (a) asserted material facts known to be untrue or in reckless disregard for the truth or falsity of the purported facts, and (b) omitted known material facts which if disclosed, would have likely resulted in the magistrate *not* issuing the requested warrant.

80. Plaintiffs are informed and believe and based thereon allege that the acts alleged above were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva, thus entitling Plaintiffs Christina Astorga and Hugo Padilla to recover compensatory damages against all defendants on this cause of action, and as against the individual defendants, punitive damages.

-23-

**COUNT SIX**

(Judicial Deception -- Plaintiffs Kiyoko and Ryan Dodson)

(42 U.S.C. § 1983 / Fourth & Fourteenth Amendments)

81. By this reference Plaintiffs, on behalf of themselves only, re-allege and incorporate previous paragraphs 1 through 57, 65 through 67 and 79 and 80, as if fully set forth herein.

82. The only defendants sued on this cause of action are LA County, LASD, Villanueva, Gentner and DOES.

83. The procurement of the October 13, 2020 warrants to seize and search the property items belonging to Plaintiffs Kiyoko and Ryan Dodson violated the Fourth Amendment in that the warrant affidavits (a) asserted material facts known to be untrue or in reckless disregard for the truth or falsity of the purported facts, and (b) omitted known material facts which if disclosed, would have likely resulted in the magistrate *not* issuing the requested warrant.

84. Plaintiffs are informed and believe and based thereon allege that the acts alleged above were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva, thus entitling Plaintiffs Kiyoko and Ryan Dodson to recover compensatory damages against all defendants on this cause of action, and as against the individual defendants, punitive damages.

**PRAYER**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

*On The First and Second Causes of Action (Emanuel Padilla):*

85. That Plaintiff Emanuel Padilla recover compensatory damages as against defendants LA County, LASD, Alex Villanueva, Michael Mileski, Christopher Gentner and DOES in an amount according to proof;

86. That as against any individual defendant sued on this cause of action, Plaintiff Emanuel Padilla be awarded punitive damages according to proof;

-24-

*On The Third Cause of Action (False Arrest):*

87. That Plaintiff Christina Astorga recover compensatory damages as against defendants Mark Reyes (#528504), Sgts. Ramon Munoz (#499029) and Juan Meza (#484495) and DOES in an amount according to proof;

88. That Plaintiff Hugo Padilla recover compensatory damages as against defendants Mikah Lopez (#652884), Sgts. Ramon Munoz (#499029) and Juan Meza (#484495) and DOES in an amount according to proof;

89. That as against any individual defendant sued on this cause of action, Plaintiffs Christina Astorga and Hugo Padilla be awarded punitive damages according to proof;

*On The Fourth Cause of Action (Excessive Force):*

90. That Plaintiffs Christina Astorga and Hugo Padilla recover compensatory damages as against defendants Nathan DeBoom (#606645), Jose Hurtado (#552712), Jose Ramirez (#503608), Aaron Escobedo (#621443), Rovert Okamoto (#511813), Adrian Ruiz (#519554), Spencer Zagurski (#550493), Charles L. McDaniel and DOES in an amount according to proof;

91. That as against any individual defendant sued on this cause of action, Plaintiffs Christina Astorga and Hugo Padilla be awarded punitive damages according to proof;

*On The Fifth Cause of Action (Judicial Deception / Astorga & H. Padilla):*

92. That Plaintiffs Christina Astorga and Hugo Padilla recover compensatory damages as against defendants LA County, LASD, Alex Villanueva, P.R. and DOES in an amount according to proof;

93. That as against any individual defendant sued on this cause of action, Plaintiffs Christina Astorga and Hugo Padilla be awarded punitive damages according to proof;

*On The Sixth Cause of Action (Judicial Deception / Dodsons):*

94. That Plaintiffs Kiyoko and Ryan Dodson recover compensatory damages as against defendants LA County, LASD, Alex Villanueva, Gentner and DOES in an amount according to proof;

95. That as against any individual defendant sued on this cause of action, Plaintiffs

00152425.WPD

Kiyoko and Ryan Dodson be awarded punitive damages according to proof;

*On All Causes of Action*:

96. That this Court award Plaintiffs attorneys fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute;

97. That the Court award costs of suit; and

98. And such other relief as the Court deems appropriate.

DATED: August 31, 2022

**COLLEEN FLYNN**
**DONALD W. COOK**
Attorneys for Plaintiffs

By_____
Donald W. Cook

00152425.WPD

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

DATED: August 31, 2022

**COLLEEN FLYNN**
**DONALD W. COOK**
Attorneys for Plaintiffs

By _____
Donald W. Cook

00152425.WPD



EXHIBIT A